FILED

2013 MAY -8 PM 2:21

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY: ______

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2012 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. HOUSHANG PAVEHZADEH, aka "Danny Paveh," Defendant. | No. CR 13-0320<br><br>INDICTMENT<br><br>[18 U.S.C. § 1347: Health Care Fraud; 18 U.S.C. § 2(b): Causing an Act to be Done; 18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft; and 18 U.S.C. §§ 982(a)(7); 981(a)(1)(C); 982(a)(2)(B); and 28 U.S.C. § 2461(c): Forfeiture] |

The Grand Jury charges:

COUNTS ONE THROUGH NINE

[18 U.S.C. §§ 1347, 2(b)]

A. INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

The Defendant and the Procedures Billed to Medicare

1. Defendant HOUSHANG PAVEHZADEH, also known as ("aka") "Danny Paveh" ("defendant PAVEHZADEH"), was a licensed chiropractor who owned and operated Sylmar Physician Medical Group, Inc. ("SPMG"), located at 12737 Glenoaks Boulevard, Suite

#12, Sylmar, California, within the Central District of California. Defendant PAVEHZADEH purported to operate SPMG as a chiropractic clinic.

2. Defendant PAVEHZADEH became a Medicare provider, and was issued a Medicare provider number, effective on or about June 1, 2004.

3. At SPMG, defendant PAVEHZADEH billed Medicare for purportedly providing chiropractic treatments to Medicare beneficiaries.

The Medicare Program

4. Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency within the United States Department of Health and Human Services.

5. Individuals who qualified for Medicare benefits were commonly referred to as Medicare "beneficiaries." Each beneficiary was given a Health Identification Card Number ("HICN") unique to that beneficiary.

6. Chiropractors and other health care providers who provided services that were reimbursed by Medicare were referred to as "providers."

7. Medicare "Part B" covers certain items and medical services provided to beneficiaries on an outpatient basis. To become eligible to participate in Medicare, Medicare required prospective providers to submit an application in which the prospective provider agreed to comply with all Medicare-related

laws and regulations. If Medicare approved the application, Medicare assigned the provider an identifying number, which enabled the provider to submit claims to Medicare for reimbursement for services provided to Medicare beneficiaries.

8. Medicare required a claim for Medicare reimbursement of provider services to set forth, among other things, the beneficiary's name and HICN, the type of service provided to the beneficiary, the date that the service was provided, the beneficiary's diagnosis, and the name and Medicare identification number of the provider who performed the service.

9. Medicare reimbursed providers only for services that were medically necessary to the treatment of a beneficiary's illness and that were provided in accordance with Medicare regulations and guidelines that governed whether a particular service or procedure would be reimbursed by Medicare.

10. To bill Medicare, a provider submitted a claim (Form 1500), which Medicare required to be truthful, complete, and not misleading. In addition, when submitting a claim to Medicare, a provider certified that the services covered by the claim were medically necessary.

11. Medicare limited coverage for chiropractic services to manual manipulations of the spine (i.e., adjusting the spine through use of the hands) performed by a licensed chiropractor to correct a condition known as subluxation. Medicare defined subluxation as a condition in which the alignment or movement of the spine was affected although contact between joint surfaces remained intact. Medicare will not pay for maintenance therapy,

that is, chiropractic treatments intended to prevent disease or promote overall health.

12. Medicare will not pay for chiropractic treatments for a beneficiary unless a subluxation is diagnosed and documented either by x-ray or through a physical examination. If diagnosed by physical examination, the examination must include a detailed patient history including, but not limited to, the patient's symptoms, past health history, cause of the trauma, and past treatments or medications.

13. At a beneficiary's initial visit to a chiropractor, Medicare required documentation of the following: the beneficiary's medical history, a description of the beneficiary's illness to ensure that the reported symptoms related to the diagnosed subluxation, the results of the chiropractor's physical examination of the spine, a diagnosis of subluxation (if appropriate), and a treatment plan. Medicare also required documentation of physical examinations and treatments provided at any follow-up visits.

B.   THE FRAUDULENT SCHEME

14. Beginning by at least in or about January 2005, and continuing through in or about February 2012, in Los Angeles County, within the Central District of California, and elsewhere, defendant PAVEHZADEH knowingly, willfully, and with intent to defraud, executed and attempted to execute a scheme and artifice: (a) to defraud a health care benefit program, namely, Medicare, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (b) to obtain money from Medicare by means of material false and

fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

15. The fraudulent scheme operated, in substance, in the following manner:

    a. Defendant PAVEHZADEH owned and operated SPMG where he worked as SPMG's only licensed chiropractor.

    b. Defendant PAVEHZADEH obtained beneficiaries' identifying information needed to bill Medicare -- including their name, date of birth, and HICN -- when beneficiaries completed paperwork at SPMG and through other means.

    c. Beneficiaries who visited SPMG received massages and other non-reimbursable treatments from defendant PAVEHZADEH or massage therapists who worked at SPMG.

    d. Defendant PAVEHZADEH then submitted and caused to be submitted false and fraudulent claims to Medicare for his purportedly personally providing chiropractic manipulations to beneficiaries when, in fact, and as defendant PAVEHZADEH well knew, he and the massage therapists had provided only massages or other treatments to the beneficiaries that were not reimbursable by Medicare.

    e. Defendant PAVEHZADEH also submitted and caused to be submitted false and fraudulent claims to Medicare for purportedly providing chiropractic manipulations to beneficiaries when, in fact, and as defendant PAVEHZADEH well knew, he had not provided any services to them. These submitted claims included claims for services on dates when defendant PAVEHZADEH was

traveling outside of Los Angeles County or was otherwise not present at SPMG.

f. In furtherance of the scheme to defraud and in an effort to conceal the scheme from others, on or about February 2, 2012, defendant PAVEHZADEH falsely reported to the Los Angeles Police Department that he was robbed and that patient files from SPMG were stolen from his vehicle. Defendant PAVEHZADEH filed the false report shortly after the United States Department of Health and Human Services, Office of Inspector General, ("HHS-OIG") informed him that HHS-OIG intended to review SPMG's patient files as part of an audit of claims paid by Medicare to defendant Pavehzadeh between January 1, 2010, and December 31, 2011.

g. Between in or about January 2005 and in or about February 2012, defendant PAVEHZADEH submitted and caused to be submitted false and fraudulent claims to Medicare for purportedly performing chiropractic treatments to beneficiaries in the amount of approximately $1,765,857. Based on these claims, Medicare paid defendant PAVEHZADEH approximately $1,033,053.

C. <u>EXECUTIONS OF THE FRAUDULENT SCHEME</u>

16. On or about the dates set forth below, within the Central District of California and elsewhere, defendant PAVEHZADEH, for the purpose of executing and attempting to execute the fraudulent scheme described above, knowingly and willfully submitted and caused to be submitted to Medicare the following false and fraudulent claims for payment for services purportedly provided to the beneficiaries listed below:

| COUNT | CLAIM NUMBER | CLAIMED DATE OF SERVICE | DATE CLAIM SUBMITTED | AMOUNT OF CLAIM | BENEFICIARY - TYPE OF SERVICE |
|---|---|---|---|---|---|
| ONE | 55110834 4147360 | 7/1/2008 | 12/9/2008 | $60.00 | M.B. - chiropractic manipulative treatment |
| TWO | 55111014 1508090 | 12/21/2009 | 5/21/2010 | $60.00 | M.B. - chiropractic manipulative treatment |
| THREE | 55110934 1740490 | 5/4/2009 | 12/7/2009 | $45.00 | C.P. - chiropractic manipulative treatment |
| FOUR | 55111035 0709340 | 8/25/2010 | 12/16/2010 | $45.00 | C.P. - chiropractic manipulative treatment |
| FIVE | 55111035 0709190 | 3/10/2010 | 12/16/2010 | $60.00 | K.M. - chiropractic manipulative treatment |
| SIX | 55111115 1438190 | 2/16/2011 | 5/31/2011 | $60.00 | K.M. - chiropractic manipulative treatment |
| SEVEN | 55111113 9350620 | 1/3/2011 | 5/19/2011 | $60.00 | E.C. - chiropractic manipulative treatment |
| EIGHT | 55111113 9350660 | 4/25/2011 | 5/19/2011 | $60.00 | E.C. - chiropractic manipulative treatment |
| NINE | 55111133 2516070 | 9/6/2011 | 11/28/2011 | $100.00 | M.C. - chiropractic manipulative treatment |

COUNTS TEN AND ELEVEN

[18 U.S.C. §§ 1028A(a)(1), 2(b)]

17. The Grand Jury hereby re-alleges and incorporates by reference paragraphs 1 through 13, and 15 of this Indictment as though set forth in their entirety herein.

18. On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant PAVEHZADEH, together with others known and unknown to the Grand Jury, knowing that the means of identification belonged to another person, knowingly transferred, possessed, and used, and caused to be transferred, possessed, and used, without lawful authority, a means of identification of another person, that is the name and HICN of the Medicare beneficiaries identified below during and in relation to Health Care Fraud, a violation of Title 18, United States Code, Section 1347, as charged in the Count specified below.

| COUNT | MEDICARE BENEFICIARY | CLAIMED DATE OF SERVICE | DATE CLAIM SUBMITTED | RELATED COUNT |
|---|---|---|---|---|
| TEN | K.M. | 3/10/2010 | 12/16/2010 | FIVE |
| ELEVEN | E.C. | 4/25/2011 | 5/19/2011 | EIGHT |

FORFEITURE ALLEGATION I

[18 U.S.C. § 982(a)(7)]

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to HOUSHANG PAVEHZADEH, also known as ("aka") "Danny Paveh" ("defendant PAVEHZADEH"), that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 982(a)(7), in the event of defendant PAVEHZADEH'S conviction under any of Counts One through Nine of this Indictment.

2. Defendant PAVEHZADEH, if convicted of any the offenses charged under Counts One through Nine of this Indictment, shall forfeit to the United States the following property:

a. All right, title, and interest in any and all property, real or personal, constituting or derived from, any proceeds obtained, directly or indirectly, as a result of any offenses set forth in any of Counts One through Nine of this Indictment including, but not limited to:

i. approximately $42,246.15 in bank funds seized from a Bank of America account number ending in 1106, in the name of Sylmar Physician Medical Group, Inc.;

ii. approximately $54,558.53 in bank funds seized from a Bank of America account number ending in 1409, in the name of Houshang Pavehzadeh;

iii. approximately $75,661.93 in bank funds seized from a J.P. Morgan Chase Bank account number ending in 5784, in the name of Houshang Pavehzadeh; and

        iv. approximately $165,795.94 in bank funds seized from a U.S. Bank account number ending in 1898, in the name of Houshang Pavehzadeh.

    b. A sum of money equal to the total amount of proceeds derived from each such offense for which defendant PAVEHZADEH is convicted.

    3. If, as a result of any act or omission by defendant PAVEHZADEH, any of the foregoing money or property (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be subdivided without difficulty, then any other property or interests of defendant PAVEHZADEH, up to the value of the money and property described in the preceding paragraph of this Indictment, shall be subject to forfeiture to the United States.

FORFEITURE ALLEGATION II

[18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(2)(B)]

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to HOUSHANG PAVEHZADEH, also known as ("aka") "Danny Paveh" ("defendant PAVEHZADEH"), that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(a)(2)(B) in the event of defendant PAVEHZADEH'S conviction under any of Counts Ten and Eleven of this Indictment.

2. Defendant PAVEHZADEH shall forfeit to the United States the following property:

a. All right, title, and interest in any and all property, real or personal, constituting or derived from, any proceeds obtained, directly or indirectly, as a result of any offense set forth in any of Counts Ten and Eleven of this Indictment; and

b. A sum of money equal to the total value of the property described in subsection (a) above.

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b), defendant PAVEHZADEH shall forfeit substitute property, up to the total value of the property described in the preceding paragraph, if, as a result of any act or omission of defendant PAVEHZADEH, the property described in the preceding paragraph, or any portion

thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RICHARD E. ROBINSON
Assistant United States Attorney
Chief, Major Frauds Section

CONSUELO S. WOODHEAD
Assistant United States Attorney
Deputy Chief, Major Frauds Section

GRANT B. GELBERG
Special Assistant United States Attorney
Major Frauds Section